IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROOSEVELT WILSON, ) <br> ) <br> Defendant. ) | No. 2:23-cr-20081-TLP-1 |

**ORDER DENYING MOTION TO DISMISS INDICTMENT**

Defendant Roosevelt Wilson faces a three-count indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); possession of 25 machine gun conversion devices unlawfully imported into the United States in violation of 26 U.S.C. § 5844 and § 5861(k); and unlawful possession of machine guns in violation of 18 U.S.C. § 922(o).[1] (ECF Nos. 1, 2.) He moves to dismiss the indictment arguing that (1) the statutes are unconstitutional or (2) as applied to him, the Second Amendment protected his possession of the guns. (ECF Nos. 21, 33.) The Government responded in opposition. (ECF No. 24.) For the reasons below, the Court **DENIES** the motion to dismiss.

---

[1] The Government brought these charges through indictment (ECF No. 1), and Defendant responded with a motion to dismiss (ECF No. 21). The Government then brought a superseding indictment. (ECF No. 26.) Rather than repeating his earlier motion to dismiss, Defendant filed a notice reiterating his motion to dismiss the indictment (ECF No. 33). The Government countered with a notice of its own reiterating its position. (ECF No. 34.) In their notices, the parties incorporate by reference all arguments made in their first motion to dismiss and response.

## **BACKGROUND**

Defendant's record includes three felony convictions for drug trafficking, possession of a weapon as a felon, and failure to pay child support. (Pretrial Services Report, ECF No. 7 at PageID 18-20.) Defendant argues that § 922(g)(1), § 922(o) and 26 U.S.C. §§ 5844 and 5861(k) are unconstitutional under the Second Amendment, citing the recent Supreme Court case, *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022). (ECF No. 21.) Defendant argues first that § 922(g)(1) is unconstitutional on its face. He then argues that the Court should dismiss the indictment because, historically, these are not the types of convictions that would render him incapable of possessing a firearm or a machine gun. (ECF No. 21 at Page 44-46.) As for the machine gun charges, Defendant claims that these weapons are not prohibited under the Second Amendment. (*Id*.) Defendant bases his arguments on the recent Supreme Court ruling in *New York Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022).

In response, the Government argues that, not only does the Second Amendment not render federal laws such as 922(g)(1) and 922(o) unconstitutional, but also Defendant's convictions would have prohibited him historically from possessing a firearm. (ECF No. 24.) And, as for the machine gun charges, the Government argues that devices that convert a handgun into a machine gun are prohibited under the text of the Second Amendment and are the type of unusual and dangerous weapons that would have been prohibited historically. (*Id*. at PageID 65-69.) And the Government argues that law abiding people do not carry machine guns for lawful purposes. ( *Id*.)

The Court next considers the standard for dismissal under Rule 12 before turning to Defendant's arguments about 922(g)(1) and then as to machine guns.

## LEGAL STANDARD

Rule 12 encourages parties to make pretrial motions, including motions to dismiss an indictment. Fed. R. Crim. P. 12(b). Rule 12(b)(3) allows a party to move to dismiss an indictment before trial if the indictment contains a defect. *Id.* at 12(b)(3). An indictment has a defect if it "fails to invoke the court's jurisdiction or to state an offense." *Id.*; *United States v. Hackworth*, 483 F. Appx. 972, 979 (6th Cir. 2012). The Sixth Circuit directs district courts to dispose of such motions when a court can determine its merits without a trial. *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). "Generally, motions are capable of determination before trial if they raise questions of law rather than fact." *Id.*

## ANALYSIS

Defendant argues that the Supreme Court's decision in *Bruen* announced a new approach for addressing the constitutionality of gun possession restrictions. In *Bruen*, the Court ruled that a New York gun law was unconstitutional. It did not speak to the constitutionality of the laws at issue here. Of course, this Court is bound by precedent. As explained below, because current binding precedent holds that 18 U.S.C. § 922(g)(1) is constitutional, the Court must deny Defendant's motion as to Count 2.

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The United States Supreme Court has held that the Second Amendment protects an individual's right to keep and bear arms for self-defense inside one's home. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). But in *Heller*, the Court gave notice that

> [a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, *nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as

>schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

554 U.S. at 626–27 (emphasis added).

Two years later, "[t]he Court in *McDonald* found that this right is fundamental and applies to the states under the Due Process Clause of the Fourteenth Amendment." *United States v. Jackson*, 622 F. Supp. 3d 1063, 1065 (W.D. Okla. 2022) (citing *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010)).  Since those Supreme Court decisions, the Sixth Circuit has upheld § 922(g)(1)'s constitutionality.  *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010); *see also Stimmel* v. *Sessions*, 879 F.3d 198, 206 (6th Cir. 2018) (holding that § 922(g)(9) is also constitutional.)

Following *Heller*, most federal appellate courts, including the Sixth Circuit, adopted a two-step framework using a means-ends analysis to assess the constitutionality of § 922(g).  *See Jackson,* 622 F. Supp. 3d at 1066; *see also Bruen*, 142 S. Ct. at 2126 (explaining the old framework); *Stimmel*, 879 F.3d at 206.  The Supreme Court in *Bruen*, however, rejected this means-ends analysis.  It adopted a different approach: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126–27, 2129–30.  Using this new standard, the *Bruen* Court held that the Second and Fourteenth Amendments protects "the right of an ordinary, law-abiding citizen" to keep and bear arms for self-defense, inside and outside of one's home.  *Id.* at 2126.

After *Bruen*, courts analyzing constitutional challenges to § 922(g)(1) therefore have to: (1) ask whether the Second Amendment's plain text covers a defendant's alleged possession of firearms despite his status as a felon; and, if so (2) evaluate whether § 922(g)(1) aligns with this

Nation's historical tradition of firearm regulation. *See id.* at 2134–35; *see also Jackson*, 622 F. Supp. 3d at 1066.

I.   **Text – the people – law abiding**

The Government argues that *Heller* and *Bruen*'s reference to "law-abiding citizens" means that the Second Amendment's plain text does not apply to felons. (ECF No. 33 at PageID 56–61.) In other words, prohibiting felons from possessing guns does not offend the Second Amendment because felons are not part of "the people" referenced in the Constitution. (*Id.*) The Government points out that in their concurrence in *Bruen*, Justices Kavanaugh and Roberts included this line from *Heller*: "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." 142 S. Ct. at 2126. But *Bruen* has caused a "simmering debate" about whether its reference to "law-abiding" citizens means that "a felon is no longer one 'of the people' mentioned in the Second Amendment." *See United States v. Gleaves*, No. 3:22-cr-00014, 2023 WL 1791866, at *3 (M.D. Tenn. Feb. 6, 2023). Because *Bruen* did not directly answer the question here, the Court looks for guidance from the Sixth Circuit.

Without a decision from the Supreme Court on a question of law, this Court must follow Sixth Circuit precedent. *Gleaves*, 2023 WL 1791866, at *3; *see also Clemons v. City of Memphis, Tennessee*, No. 16-cv-02333, 2016 WL 7471412, at *3 (W.D. Tenn. Dec. 28, 2016). On this point, the Sixth Circuit has been clear, 18 U.S.C. § 922(g)(1) is constitutional. *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010). This Court agrees with Judge Waverly Crenshaw when he said in *Gleaves* that "[t]he Court does not read *Bruen* as legitimately calling such authority into doubt." *Gleaves*, 2023 WL 1791866, at *3.

Considering the language from *Bruen, Heller* and *Carey*, this Court finds that the text of the Second Amendment applies to law abiding persons, not felons.

## II.   As Applied Challenge—Historical Tradition

Defendant next raises an "as applied" challenge to the statute. (ECF No. 21 at PageID 44-46.) He argues that his convictions for drug dealing, and unpaid child support are not the types of infractions that would historically lead to prohibiting him from possessing a gun. (*Id*.) Defendant left off his list of felonies, his conviction for being a felon in passion of a gun. Defendant cites English Common Law for the crime of rebellion as historical example of when our forefathers would prohibit one from possessing a weapon. (*Id*.) He then concludes that his convictions do not rise to the level of such a major crime. (*Id*.)

The Government disagrees. (ECF No. 24 at PageID 57–63.) The Government focuses on historical examples when persons were convicted of non-violent crimes like embezzlement or forgery, society deemed them "dangerous" or "untrustworthy." (*Id*. at PageID 58–65.) Their sentence was often death or at least forfeiture of their real and personal property. (*Id*.) The Government's position is persuasive. Almost without exception, the cases addressing the constitutionality of 18 U.S.C. § 922(g)(1) after *Bruen* have found "that the Second Amendment does not prevent Congress from disarming those that it deems to be a danger to public safety." *United States v. Goins*, No. 5:22-cr-00091, 2022 WL 17836677, at *12 (E.D. Ky. Dec. 21, 2022).

Recently, the district court in Kentucky analyzed this question and summarized historical references from an earlier case, much like the Government's references here. *United States v. Taylor*, 2023 WL 1423725, at *2 (E.D. Ky. Jan. 31, 2023) (citing *Goins*, 2022 WL 17836677, at *12.) For example, in *Taylor*, the court noted that the *Goins* court:

> applied *Bruen's* framework and assessed the history relevant to the Second
> Amendment to find an analog for Section 922(g)(1). From a deeply rooted English

6

common law tradition that the colonies inherited, the Court found that the Second Amendment does not prevent Congress from disarming those that it deems to be a danger to public safety.

*Taylor*, 2023 WL 1423725, at *2 (internal citation omitted) (citing *Goins*, 2022 WL 17836677, at *12).

Drawing on the approaches in *Bruen*, 142 S. Ct. at 2138–42, when the Court assessed pre-revolutionary English history, and in *Heller*, 554 U.S. at 592–93, when the Court assessed the relevant English history of the late 17th century, the *Taylor* court considered examples of weapon restrictions from English Common law.

> That tradition begins with the 14th Century Statute of Northampton, which prohibited Englishmen from bringing "force in affray of the peace . . . upon pain to forfeit their Armour to the King . . . . " *Id.* at *10 (quoting *Bruen*, 142 S. Ct. at 2139). Overtime, the statute fell into disuse but not complete irrelevance. *Id.* (quoting *Bruen*, 142 S. Ct. at 2140–41). During a 17th century trial, a court summarized the state of the law as "that the act of 'go[ing] armed to terrify the King's subjects' was 'a great offence at the common law' . . . . " *Id.* (quoting *Bruen*, 142 S. Ct. at 2141). Around this time, Parliament embodied that tradition in an act that permitted officers of the Crown to "disarm anyone they judged to be 'dangerous to the Peace of the Kingdom.'" *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 456 (7th Cir. 2019) (Barrett, J., dissenting)). Indeed, founding-era, American legislatures similarly used this tradition to "categorically disarm[ ] groups whom they judged to be a threat to the public safety."

*Taylor*, 2023 WL 1423725, at *2.

This Court finds the *Taylor* and *Goins* examples and reasoning persuasive. "So, history comports with common sense. While the Second Amendment creates a right to bear arms, its scope is limited by Congress's traditional power to disarm people that pose a threat to public safety. And Congress can base the decision to disarm a class of people upon modern judgments as to "the categories of people whose possession of guns would endanger the public safety . . . ." *Taylor*, 2023 WL 1423725, at *2 (quoting *Goins*, 2022 WL 17836677, at *12).

And so, *Bruen*'s impact on the viability of criminal prohibitions like § 922(g) remains unclear. But the law of the Sixth Circuit is clear.

With the post-*Bruen* legal landscape in mind, this Court agrees with the conclusion reached by so many of our sister courts, including *Taylor*, *Goins* and *Gleaves*, and the overwhelming weight of post-*Bruen* decisions. This Court holds that § 922(g)(1) does not violate the Second Amendment and therefore **DENIES** Defendant's motion to dismiss as to Count 2. But with his motion, Defendant preserves this issue for future decision by higher courts.

### III.    Machine Guns

Defendant is facing two charges related to importing and possessing what the Government calls machine guns. (Superseding Indictment Counts 1 and 3, ECF No. 26.) The firearm at issue is a device called a switch that allegedly converts a handgun into what the ATF defines as a "machine gun." The indictment alleges Defendant violated 26 U.S.C. §§ 5844 and 5861(k)(Count 1) and 18 U.S.C. § 922(o)(Count 3). Turning now to the law.

In *Bruen*, the Supreme Court said that there is no "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 142 S. Ct. 2128 (*quoting Heller*, 554 U.S. 626). Also, *Bruen* pointedly upheld the Supreme Court's rulings in *Heller* and *McDonald*. 142 S. Ct. 2122 ("individuals have a right to possession of a handgun for self defense outside the home 'consistent with *Heller* and *McDonald*.' ") In fact, Justice Alito in his concurrence noted "our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun . . . nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns." 142 S. Ct. 2157. In a separate concurrence, Justices Kavanaugh and Roberts noted, "as

8

*Heller* and *McDonald* established and the Court today again explains . . . Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Id*. at 2162. (*quoting Heller*, 554 U.S. 636).

The Sixth Circuit interpreted *Heller* and held that the Second Amendment allows for the regulation of unregistered machine guns for personal use. *Hamblen v. United States*, 591 F.3d. 471, 474 (6th Cir. 2009). Remember, *Bruen* dealt with the *conduct* protected by the Second Amendment. It said nothing about the *types of weapons* one can possess. So the holding in *Hamblen* remains the law of the Sixth Circuit.

In a recent decision interpreting similar allegations, the District Court of the Eastern District of Kentucky held: "Even if *Bruen* had not specifically upheld *Heller* and *McDonald*, the two firearms charges that the Defendants challenges are still constitutional under the *Bruen* analysis. The first step of the *Bruen* analysis requires a court to determine whether the plain text of the Second Amendment covers an individual's conduct. *Bruen*, 142 S. Ct. 2129–30. Defendant's motions will be denied because Section 922(o) and Section 5861(j) regulate conduct outside of the scope of the Second Amendment." *United States v. Smith*, 2023 WL 6880423 at *2 (October 18, 2023). This Court finds the analysis in *Smith* compelling and persuasive here.

Considering the Supreme Court precedent and the rulings in *Hamblen* and *Smith*, this Court **DENIES** Defendant's motion to dismiss Counts 1 and 3—those related to his possession and trafficking of "machine guns."

For the above reasons, the Court **DENIES** Defendants Motion to Dismiss the (Superseding) Indictment.

**SO ORDERED**, this 7th day of November, 2023.

                                          s/ Thomas L. Parker
                                         THOMAS L. PARKER
                                         UNITED STATES DISTRICT JUDGE